**Robert B. GRENIER, et al., Plaintiffs, Appellees,**

v.

**VERMONT LOG BUILDINGS, INC., et al., Defendants, Third–Party Plaintiffs, Appellants.**

v.

**DAP, INC. and Champion International Corp., Third–Party Defendants, Appellees.**

No. 95–2084.

United States Court of Appeals, First Circuit.

Heard April 1, 1996.

Decided Sept. 25, 1996.

---

Carol A. Griffin with whom Lawrence F. Boyle, W. Joseph Flanagan and Morrison, Mahoney & Miller, Boston, MA, were on brief, for appellants.

Roger D. Matthews with whom Nick K. Malhotra and Madan and Madan, P.C., Boston, MA, were on brief, for appellees DAP, Inc. and Champion International Corp.

Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.

BOUDIN, Circuit Judge.

Joan Grenier suffered from chronic gastritis for several years, allegedly in reaction to the wood preservative applied to the walls of her log home. She and her family sued Vermont Log Buildings, Inc. ("Vermont Log"), the manufacturer of their home, claiming negligence, breaches of warranty, and violation of Mass. Gen. L. ch. 93A.[1] Vermont Log in turn filed a third-party complaint against the alleged manufacturers of the preservative. The district court granted summary judgment for the manufacturers, rejecting Vermont Log's third-party claims. Vermont Log appeals. We affirm.

Because the case was decided on summary judgment, our recitation of the facts is based primarily on the facts as alleged. *Snow v. Harnischfeger Corp.*, 12 F.3d 1154, 1157 (1st Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994). In April 1975, Robert and Joan Grenier purchased the components of a log house from an authorized dealer for Vermont Log. The logs were shipped to the Greniers' lot in Massachusetts and assembled there. The Greniers moved into the house in May 1975. Vermont Log had treated the logs with Woodlife, a wood preservative containing the active ingredient pentachlorophenol.

In early 1982, Joan Grenier began displaying symptoms of gastritis, and continued to suffer intermittent stomach and back pain for several years. A doctor who examined her in April 1987 suspected that her condition was caused by wood preservative in the logs of the Greniers' cabin. Later tests revealed an elevated level of pentachlorophenol in her body. When she moved out of the house, her level of pentachlorophenol dropped and her symptoms abated.

At the time the Greniers bought their cabin, Woodlife was registered as a pesticide as required by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136–136y. FIFRA is one of a family of federal regulatory statutes that are concerned with health, safety and (in this case) the environment. Two of its main components are a requirement of prior approval of the product by the Environment Protection Agency, 7 U.S.C. § 136a(a), and of EPA approval of the labeling supplied with the product, *id.* § 136a(c)(1)(C).

In early 1975, the Woodlife labeling, which EPA had approved, warned that the product was toxic and was not "for use or storage in or around the home." The labeling also included a section describing the uses of the product: "PRODUCT USES: Millwork, shingles, siding, structural lumber, fences, trellises, outside furniture, vacation homes, all lumber and wood products." On September 26, 1975, the EPA approved a modified label for Woodlife. On the new labeling, the section listing product uses no longer included "vacation homes" as a use and added a further warning: "Do not use on interior surfaces which are not to be finished."

The Greniers filed suit in 1990 against Vermont Log and two allegedly related corporate entities (collectively, "Vermont Log"), alleging that pentachlorophenol used in the log home caused Joan Grenier's illness. The claims as ultimately amended comprised ten different counts, including bare bones claims for express and implied warranty breach, for negligence in design, manufacture and failure to warn, and under chapter 93A. Joan Grenier sought damages for her injuries; her husband and the Greniers' three children claimed loss of consortium.

In 1991, Vermont Log filed a third-party complaint against DAP, Inc. and Roberts

---

**1.** Chapter 93A outlaws "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," and permits awards of multiple damages and attorneys' fees.

Consolidated Industries, the alleged manufacturers, sellers, and distributors of Woodlife. Thereafter, Champion International, Inc., was added as a third-party defendant (Roberts was later dropped from the case by agreement). As amended, Vermont Log's third-party complaint asserted claims for contribution under Mass. Gen. L. ch. 231B based on negligence by the manufacturers of Woodlife, and claims for breaches of warranty by those manufacturers.

In August 1991, DAP and Roberts removed the action on diversity grounds to federal district court where it was assigned to Judge Zobel. In due course, Vermont Log and the third-party defendants moved for summary judgment on the Greniers' claims on the grounds that they were barred by the statute of limitations and that they were preempted by FIFRA. On November 4, 1992, Judge Zobel ruled that Joan and Robert Grenier's warranty and negligence claims were barred by the statute of limitations, but that their chapter 93A claims were timely under its longer limitations period. She also held that none of the children's claims for loss of consortium was barred, since the statute of limitations was tolled during their minority.

Judge Zobel further held that Vermont Log could seek contribution from DAP and Champion (for convenience we refer to them hereafter as "the Woodlife manufacturers"); but she ruled that Vermont Log could not obtain indemnification because by selling the logs to the Greniers Vermont Log participated in the conduct that allegedly damaged the Greniers. Finally, Judge Zobel concluded that under *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), none of the claims was preempted by FIFRA.

After Judge Zobel's November 1992 ruling, the case was reassigned to newly appointed Judge Gorton. In May 1993, the Woodlife manufacturers filed new motions for summary judgment, this time against Vermont Log; they argued (based on intervening case law) that FIFRA preempted all of Vermont Log's remaining claims against them. Then–Magistrate Judge Ponsor, to whom the case

had been referred, held a hearing on the motion in September 1993.

In July 1994, Judge Ponsor, having recently been appointed a district judge, relinquished jurisdiction in this case. At the same time he issued a memorandum in a companion case brought by a different plaintiff against Vermont Log. Judge Ponsor there ruled that FIFRA preempted claims of failure to warn and breach of implied warranty, but not claims of breach of express warranty and negligent design and manufacture. *Jillson v. Vermont Log Bldgs., Inc.*, 857 F.Supp. 985 (D.Mass.1994).

After the present case was returned to Judge Gorton, he ruled that all of Vermont Log's claims were "related to the labeling and packaging" of Woodlife. While noting that a properly supported express warranty claim might not be preempted, Judge Gorton found Vermont Log's claim to be "based entirely on the label" because "[n]o other factual or evidentiary basis for the claim was provided in the pleadings." Judge Gorton granted summary judgment to DAP and Champion and entered a separate final judgment in their favor. *See* Fed.R.Civ.P. 54(b).

On appeal, Vermont Log argues that the district court erred in finding that all of its claims were preempted: it says that FIFRA preempts only those state-law claims based on the labeling or packaging of pesticides and it asserts that most of its claims are not based on the labeling or packaging of Woodlife but rather upon design and manufacturing defects and upon failure to warn unrelated to labeling and packaging. We review the district court's grant of summary judgment *de novo*, drawing reasonable inferences in favor of Vermont Log. *Brown v. Hearst Corp.*, 54 F.3d 21, 24 (1st Cir.1995).

■ We begin, in the classic fashion, by seeking to lay the counts allegedly preempted along side the statutory preemption clause and the cases that have interpreted it and similar language in other statutes. Where, as here, Congress has included an express preemption clause in the statute, we start with the language of that provision. *Medtronic, Inc. v. Lohr*, — U.S. —, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112

S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992). FIFRA's preemption clause, 7 U.S.C. § 136v, reads as follows:

(a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

██ It is apparent from subsection (a), as well as other statutory language, *e.g.*, 7 U.S.C. § 136w–1, that FIFRA does not wholly oust the states from pesticide regulation. *See generally Mortier,* 501 U.S. at 612–13, 111 S.Ct. at 2485–86. And it is equally apparent from subsection (b) that the state cannot apply different or additional "requirements" for "labeling and packaging." It was once an open question, but is now settled by the Supreme Court in *Cipollone* and *Lohr,* that "requirements" in this context presumptively includes state causes of action as well as laws and regulations. *Lohr,* —— U.S. at ——–——, 116 S.Ct. at 2251–53 (plurality opinion), *id.,* at ——–——, 116 S.Ct. at 2259–60 (Breyer, J., concurring in part and concurring in judgment), *id.,* at ——–——, 116 S.Ct. at 2262–63 (O'Connor, J., Scalia, J., and Thomas, J., concurring in part and dissenting in part); *Cipollone,* 505 U.S. at 521–22, 112 S.Ct. at 2620–21 (plurality opinion), *id.,* at 548–49, 112 S.Ct. at 2633–35 (Scalia, J. and Thomas J., concurring in judgment in part and dissenting in part).

This court so held in *King v. E.I. Dupont De Nemours & Co.,* 996 F.2d 1346 (1st Cir.), *cert. dismissed,* 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993), which, unlike *Cipollone* and *Lohr,* involved FIFRA itself. Other circuits are in accord. *E.g., Papas v. Upjohn Co.,* 985 F.2d 516 (11th Cir.), *cert. denied,* 510

U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). Our case involves third-party claims—by the log supplier against the chemical manufacturers—but nothing in the preemption clause limits its effects to suits by consumers. Indeed, Vermont Log itself concedes that its claims based on the inadequacy of EPA approved labeling are preempted by FIFRA; its objection, as already noted, is that most of its claims do not fit this rubric.

To appraise this objection requires a closer description of Vermont Log's actual claims. Here, Vermont Log's amended third-party complaint is structured so that, in four separate counts, two different categories of claims are directed at DAP and Champion. In parallel counts III and V, Vermont Log's complaint says that DAP and Champion are or may be liable to Vermont Log for their own "negligent design, manufacture, and failures to warn"; confusingly, Vermont Log then in the same counts asserts these wrongs simply as the basis for a pro rata contribution claim against DAP and Champion.[2]

Then, in two other parallel counts (IV and VI), Vermont Log asserts that DAP and Champion are or may be liable for breach of "express and implied warranties that said product [apparently a reference to Woodlife] was of merchantable quality, free of hazardous defects, and fit for the particular purpose intended." On this claim, Vermont Log seeks not pro rata recovery but compensation for whatever it may have to pay to the Greniers plus its costs in conducting the litigation. It is easiest to discuss all of Vermont Log's claims functionally, that is, in terms of the defendants' alleged wrongful conduct.

██ *Failure to warn.* The most obvious state-law claim for Vermont Log, preemption aside, is that the Woodlife manufacturers should have warned Vermont Log that Woodlife was not suitable for residences. This claim, whether presented as a negligence claim or a claim for breach of implied warranty, is preempted by FIFRA as far as

---

**2.** It is unclear why Vermont Log sought only pro rata contribution since the negligent acts alleged might also entitle it to *full* recovery absent some bar like preemption. *Cf. Fireside Motors, Inc. v.*

*Nissan Motor Corp.,* 395 Mass. 366, 479 N.E.2d 1386, 1389 (1985) (citing *Restatement (Second) of Torts* § 886B, cmt. c (1979)).

the present case is concerned. Vermont Log concedes this is so as to any inadequacy in the labeling as approved by EPA.

It argues, however, that FIFRA permits a failure to warn claim so far is it is not "based on labeling or packaging." Here lurks a potentially vexing problem: one can imagine claims based on what was said or not said during conversations, in correspondence, or in point of sales signs or the absence of such signs. Whether and to what extent these kinds of claims should be preempted depends on a reading of section 136v and related judgments. The answers are far from clear.[3]

But the structure of FIFRA indicates that Congress intended the pesticide labeling to bear the *primary* burden of informing the buyer of dangers and limitations. *See* 7 U.S.C. § 136a(c); 40 C.F.R. § 156.10. If the plaintiff wants to premise a failure to warn claim on a communication or failure to communicate by some other means, it is incumbent on the plaintiff to set forth a coherent specific claim. On appeal, Vermont Log does not even attempt to explain how its failure to warn claim is based on anything other than the alleged inadequacy of the labeling approved by EPA.

■ *Affirmative misstatement.* Under Massachusetts law, an express warranty may be created where the seller makes any "affirmation of fact or promise" or "description of the goods" and this statement becomes part of the basis of the bargain. Mass. Gen. L. ch. 106, § 2–313. An inaccurate statement might also support a recovery under a theory of negligent misrepresentation. *Cf. Danca v. Taunton Sav. Bank,* 385 Mass. 1, 429 N.E.2d 1129, 1133–34 (1982). Such claims could conceivably be based either on statements made in the labeling or elsewhere; and the statements might be either consistent with FIFRA requirements or in violation of them.

These variations give rise to different and difficult preemption questions. The circuits are not unanimous even as to FIFRA itself, *see generally Lowe v. Sporicidin Int'l,* 47 F.3d 124, 128–29 (4th Cir.1995), let alone

other statutes. As *Lohr* illustrates, the signals from the Supreme Court are blurred by disagreements within the Court. But, in this case, the only affirmative misstatement identified by Vermont Log is the statement in the original labeling that Woodlife was suitable for application to "all wood and lumber products."

This unqualified statement may have been inaccurate, as its later revision suggests, but it was a statement contained in EPA-approved labeling. To premise liability on the inaccuracy of the statement is in substance to determine that a different statement should have been made in the labeling. Yet the statute itself prohibits a state requirement as to labeling that is "different" than that prescribed by federal law. 7 U.S.C. § 136v. *See Lowe,* 47 F.3d at 129. Thus the only express warranty claim specifically identified by Vermont Log is preempted.

■ *Misdesign or manufacture.* Whether on a warranty or negligence theory, recovery might be premised on mistakes in the design or manufacture of the product, and the manufacturing defect might be generic or a defect in a single item. *E.g., Hayes v. Ariens Co.,* 391 Mass. 407, 462 N.E.2d 273, 277 (1984). Whether such claims are preempted may depend both on their precise make-up and on the underlying statute. Under FIFRA, the situation is complicated by the fact that the preemption clause refers only to labeling and packaging while the statute empowers the agency to regulate the product as well as the description. 7 U.S.C. § 136a(a).

In all events, merely to *call* something a design or manufacturing defect claim does not automatically avoid FIFRA's explicit preemption clause. *In re DuPont–Benlate Litigation,* 859 F.Supp. 619, 623–24 (D.P.R.1994). Here, Vermont Log's only elaborated claim under this heading is that Woodlife was defectively designed or manufactured because it was foreseeable that it would be used on residences and it was unfit *for this use.* But this claim is effectively no more than an

---

**3.** *Compare Chemical Specialties Manufacturers Ass'n v. Allenby,* 958 F.2d 941, 946–47 (9th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 80, 121 L.Ed.2d 44 (1992) (state statute requiring point-of-sale warnings not preempted), with *Taylor AG Industries v. Pure–Gro,* 54 F.3d 555, 561 (9th Cir.1995) (failure to warn claims based on inadequacy of point-of-sale signs preempted).

attack on the failure to warn against residential use and therefore is a preempted claim.

This certainly does not mean that every misdesign or mismanufacturing claim would be debarred by section 136v. In a batch of properly made products, one item might be defective or tainted; or perhaps one might design a pesticide that, while properly approved and labeled, was unduly dangerous for any legitimate use. In the former case, it is hard to see why FIFRA preemption would even be arguable; in the latter, there would be at most an *implied* preemption claim, based not on section 136v but on EPA's approval of the product; and it is by no means clear that such a preemption claim would prevail.[4]

However, in this instance, Vermont Log has provided no hint whatever of how Woodlife has been misdesigned or mismanufactured beyond Vermont Log's suggestion—which we regard as a disguised labeling claim—that the product was not fit for residential use. Vermont Log's position, implicit in its brief and explicit in oral argument, is that no such disclosure or elaboration was required. It is enough, it contends, that its complaint alleged misdesign and mismanufacture in general terms and that not every such claim is automatically preempted.

If the Woodlife manufacturers had squarely argued a lack of evidence in their motion for summary judgment, Vermont Log's position could be rejected out of hand. Vermont Log bears the burden of proof at trial and, under *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), it would take very little in the way of a negative averment at the summary judgment stage to require Vermont Log to identify its evidence—trial-worthy evidence of a specific misdesign or manufacturing defect which was not a disguised mislabeling claim. *Mottolo v. Fireman's Fund Ins. Co.,* 43 F.3d 723, 725 (1st Cir.1995).

Whether Vermont Log got such due notice of a *Celotex* challenge could be debated. On the one hand, the summary judgment motion was cast primarily in abstract preemption terms; on the other hand, Vermont Log could at any time have *explained* to the district court just what kind of misdesign or manufacturing defect claim it was making over and above a recast version of its preempted labeling claim. As is often the case, the answer is to be found more in common sense than categorical rules.

If we thought that Vermont Log had been genuinely misled, we would remand to allow it to identify its misdesign or mismanufacture claim and require the chemical manufacturers to formulate a new summary judgment motion. Indeed, we might be tempted to follow this course even now if Vermont Log had troubled to tell us just what specific design or manufacturing defect it plausibly suspected or how it had been denied a promising opportunity to unearth this information through discovery. But at oral argument our most persistent questions on the subject were met only with generalities.

It is too late in the day for such gambits. It is one thing at the outset of a case to ask for indulgence to pursue initial discovery; it is quite another matter, on appeal and after five years, to ask for a reversal based on theoretical possibilities but without any effort to explain how a remand might bear fruit. If there are unpreempted claims of design or manufacturing defect, Vermont Log has never adequately identified them, let alone pointed to any supporting evidence.

■ *Indemnification.* As already explained, Vermont Log's third-party complaint did explicitly request contribution; in fact, its negligence counts were asserted not as independent claims for full recovery but merely as the basis for pro rata contribution under the Massachusetts statute. Conversely, although Vermont Log now speaks of "indemnification" claims, the third-party complaint nowhere refers to indemnification, although the warranty counts seek the same damages that indemnification might provide.

Traditionally, indemnification has comprised a distinct body of doctrine that, to put the matter too crudely, permits a vicariously

---

**4.** *See Cipollone,* 505 U.S. at 525–28, 112 S.Ct. at 2622–23. *Compare Mendes v. Medtronic,* 18 F.3d 13 (1st Cir.1994) (Medical Device Act), *with In re DuPont–Benlate–Litigation,* 859 F.Supp. at 622–23 (FIFRA).

liable party (*e.g.,* an innocent principal) to obtain reimbursement from a culpable party (*e.g.,* a blameworthy agent) whose conduct gave rise to the liability. P. Keeton, *Prosser and Keeton on Torts* § 51, at 341–44 (5th ed.1984); *Decker v. Black and Decker Mfg. Co.,* 389 Mass. 35, 449 N.E.2d 641, 644–45 (1983). Thus, indemnification may sometimes be available even when no other direct tort or contract claim will lie.

On appeal, Vermont Log says as an alternative final argument that Judge Zobel erred in rejecting its "claim of indemnity" on the ground that "[i]demnity is permitted only where one does not join the negligent act. . . ." We confess ourselves puzzled by Judge Zobel's ruling; while the principle may be sound, it is far from clear that Vermont Log's culpability in this case—at least on some warranty theories asserted by the Greniers—is of a kind that would automatically preclude an indemnification claim by Vermont Log against DAP and Champion.

■ Yet even if we assume (*dubitante*) that Vermont Log has asserted a separate claim for indemnification and assume further that it is not barred from indemnification by its own participation in the wrong, a crucial obstacle remains. The body of doctrine comprising indemnification law varies from state to state; but in Massachusetts, an indemnification claim does require a showing of *fault* on the part of the parties or parties against whom the demand for indemnification is leveled. *Stewart v. Roy Bros.,* 358 Mass. 446, 265 N.E.2d 357, 365 (1970).

Here, the only allegations of fault made by Vermont Log against DAP and Champion are the charges of negligence and breaches of warranty made in counts III–VI of the amended third-party complaint. We have already found these charges to be inadequate, some because of federal preemption and some because they are both too general and wholly unsupported. And if these claims are themselves inadequate, there is no foundation for a showing of fault as to DAP and Champion that would permit Vermont Log to claim indemnification.

There is a final point to be made that is pertinent to future cases of this kind. Vermont Log has now placed itself in an unhappy position where the Greniers might recover against it while it would no longer have recourse against those who supplied it with Woodlife. This assumes, perhaps fancifully, that the Greniers, or at least the minors, might structure and then prove a claim that managed at the same time to avoid every type of preemption and any kind of defense based on Vermont Log's own possible ignorance. But the theoretical risk is there.

This risk arises directly from the entry of a separate final judgment under Rule 54(b) against Vermont Log on its third-party claims in advance of the full resolution of the Greniers' first-party claims against Vermont Log. If Vermont Log had objected to a separate judgment in the district court *and* appealed on that issue in this court, we would be very much open to such an argument. The reason is the overlap of first-party and third-party claims in this case and the resulting risk (in this case) of inconsistent results.

But Vermont Log has not made this argument. If it had no objection to the entry of a separate judgment, certainly the district court had no obligation to withhold such a judgment. Indeed, Vermont Log may have had tactical reasons, unknown to us, for allowing the uncoupling of the two complaints. Our sole reason for mentioning the point is to alert district courts in future cases that such an objection to a separate judgment may have significant force.

*Affirmed.*