Jack C. **ORDNER** and Debra L. Ordner, Individually and on Behalf of their minor children, Corrin D. Ordner and Chelsea L. Ordner, and Jessica F. Ordner, Individually,

v.

**K–H CORPORATION and John Doe Corporations 1–25.**

No. 97–001ML.

United States District Court, D. Rhode Island.

July 19, 1999.

Mark B. Decof, Decof & Grimm P.C., Providence, RI, for Jack C. Ordner, Debra L. Ordner, Jessica F. Ordner, plaintiffs.

Benjamin V. White, III, Michael W. Long, Vetter & White, Incorporated, Providence, RI, Leonard A. Spivak, Allen S. Joslyn, Cahill, Gordon & Reindel, New York City, for K–H Corporation, defendant.

## MEMORANDUM AND DECISION

LISI, District Judge.

This case is before the Court for consideration of K–H Corporation's objections to a Report and Recommendation issued May 14, 1998. *See* 28 U.S.C. § 636(b)(1)(B); D.R.I.Loc.R. 32(c). For the reasons outlined herein, the Court adopts Magistrate Judge Lovegreen's recommendation that the defendant's motion for summary judgment should be denied. The Court travels a different route in arriving at that determination.

### I. Standard of Review

Pursuant to the mandates of Fed. R.Civ.P. 72(b), this Court reviews *de novo* K–H's written objections to the magistrate judge's Report and Recommendation. *See Unauthorized Practice of Law Comm. v. Gordon,* 979 F.2d 11, 13 (1st Cir.1992) (per curiam) (stating that district court should employ *de novo* standard when reviewing findings and recommendations made pursuant to 28 U.S.C. § 636(b)(1)(B)).

In reviewing a motion for summary judgment, the district court should grant such a motion if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the evidence on that issue, viewed in a light that is most agreeable to the non-movant, is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995). A fact is "material" if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### II. Facts

The Court recounts the undisputed facts in a light most favorable to the non-moving party, here the plaintiffs. *See, e.g., One Nat'l Bank v. Antonellis,* 80 F.3d 606, 608 (1st Cir.1996).

On September 3, 1986, the Liquid and Bulk Tank Division of Fruehauf Corporation ("Fruehauf") manufactured, designed, constructed, and tested a Department of Transportation (DOT) Specification MC 306 cargo tank[1] ("Tanker"), serial number 1H4TO4324HK003001. Fruehauf constructed the Tanker to transport hazardous materials. Pursuant to federal regulations then extant, Fruehauf equipped the top of the Tanker with guards to protect the vehicle's manhole assemblies in the event of a rollover. The guards consisted of two inverted, "V"-shaped rails that ran the length of the Tanker on either side of the manhole assemblies. Fruehauf affixed end plates to the rails, which were higher than any part of an individual manhole assembly.

On or about March 27, 1994, the plaintiff Jack Ordner ("Ordner") was operating the Tanker when it rolled over and gasoline began to spill from it. The gasoline ignited, causing Ordner to suffer severe burn injuries as a result of the accident. Ordner and the other plaintiffs (collectively "Plaintiffs") filed this action on January 3, 1997, naming Fruehauf Trailer Corporation, Fruehauf's successor, as the sole party defendant.

After filing the initial complaint, a number of procedural skirmishes ensued. Plaintiffs filed two amended complaints in an attempt to secure the proper party defendants. The parties then agreed to dismiss certain defendants from the action. As a result, K–H Corporation ("K–H") and

---

1. The definition of "cargo tank" is located at 49 C.F.R. § 171.8.

the John Doe Corporations remain the only party defendants to this action. K–H assumes the liabilities of Fruehauf Trailer Corporation as its successor corporation.

Plaintiffs' Second Amended Complaint alleges that K–H was negligent when it designed, manufactured, and tested the "manhole protectors" on the Tanker. The complaint also alleges that K–H was negligent in its failure to warn the product's users of this dangerous condition. Plaintiffs allege that because Defendant manufactured a dangerous instrumentality, it "owed a legal duty ... to exercise the highest degree of care consistent with the practical operation of its business" to prevent injury to the foreseeable user or operator. The complaint also sounds in strict products liability, alleging that the manufacturer distributed a product that was defective and unreasonably dangerous, and that the manufacturer failed to provide an adequate warning of the product's defective and dangerous condition. K–H has moved for summary judgment pursuant to Fed.R.Civ.P. 56.

### III. Discussion

#### A. Introduction

The issue presented in this case is whether certain federal laws preempt Plaintiffs' common law tort claims. K–H argues that 49 U.S.C. § 5125 preempts Plaintiffs' claims. Among other things, that statute preempts certain state "requirement[s]" that are "not substantively the same" as the federal requirements which govern the design and manufacture of containers that are used for transporting hazardous materials. The container involved in this litigation is the Tanker that Fruehauf manufactured on September 3, 1986. Magistrate Judge Lovegreen recommended the denial of K–H's motion for summary judgment, reasoning that Plaintiffs' common law tort claims were not preempted by § 5125.

K–H has objected to the Report and Recommendation on three grounds. First, the defendant contends that the magistrate judge's construction of § 5125 is inconsistent with Congress's desire to create uniform standards to govern the transportation of hazardous materials in intrastate and interstate commerce. Second, K–H argues that the magistrate judge misconstrued one of the relevant federal regulations in deciding that § 5125 did not preempt Plaintiffs' claims. Finally, K–H contends that the magistrate judge improperly determined that the affidavit of Plaintiffs' expert was sufficient to create an issue of material fact that would preclude the entry of summary judgment in the defendant's favor.

#### B. The Statute

The United States Court of Appeals for the First Circuit has stated: "In determining questions of preemption, a court 'must examine the [act's] language against the background of its legislative history and historical context.' " *Wood v. General Motors Corp.*, 865 F.2d 395, 404 (1st Cir.1988) (quoting *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987)). Heeding this mandate, the Court proceeds to a discussion of the relevant statute and its legislative and historical background.

In 1975, Congress enacted the Hazardous Materials Transportation Act ("HMTA"), Pub.L. No. 93–633, 88 Stat. 2156, at §§ 101–02 (1975), "to improve the regulatory and enforcement authority of the Secretary of Transportation to protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce." Specifically, § 105 of the HMTA expanded the Secretary of Transportation's authority to regulate the manufacturers of containers and packages used to transport hazardous materials. *See* H.R.Rep. 93–1083 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7669, 7679. Additionally, Congress believed that the federal regulations would "preclude a multiplicity of State and local regulations and the potential for varying as well as conflicting regu-

lations in the area of hazardous materials transportation." S.Rep. No. 93–1192, at 37 (1974), *quoted in National Tank Truck Carriers, Inc. v. Burke,* 535 F.Supp. 509, 516 (D.R.I.1982), *aff'd,* 698 F.2d 559 (1st Cir.1983).

In 1990, Congress amended the HMTA, passing the Hazardous Materials Transportation Uniform Safety Act of 1990 ("HMTUSA"), Pub.L. No. 101–615, 104 Stat. 3244 (1990). The HMTUSA added a section containing congressional findings, some of which are significant for purposes of this litigation. *See id.* at § 2. First, Congress found that several States and localities had enacted laws and regulations that varied from their federal counterparts. This collection of statutes and regulations, Congress explained, had created "the potential for unreasonable hazards in other jurisdictions" and had confounded the shippers and carriers who were required to comply with "multiple and conflicting" regulatory requirements. *See id.* Congress also determined that the potential health and environmental risks associated with the transportation of hazardous material made consistency in the laws governing their transport "necessary and desirable." *Id.* Finally, "[i]n order to achieve greater uniformity and to promote the public health, welfare, and safety at all levels," Congress determined that "Federal standards for regulating the transportation of hazardous materials in intrastate, interstate, and foreign commerce" were necessary. *Id.*

The HMTUSA also made substantive changes to the HMTA's preemption language. Section 112 of the HMTA provided that "any requirement, of a State or political subdivision thereof, which is inconsistent with any requirement set forth in this title, or in a regulation issued pursuant to this title, is preempted." The HMTUSA amended this language to provide a more complex and precise preemption standard. Congress subsequently revised and codified the HMTUSA, *see* Pub.L. No. 103–272, 108 Stat. 745 (1994) (codified as revised at 49 U.S.C. §§ 5101–5127), and the relevant preemption provision is contained therein at 49 U.S.C § 5125.

## C. Preemption

### 1. Introduction

The Supreme Court of the United States has stated that when a statute contains an express preemption clause, "the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). In construing the preemptive effects of § 5125, this Court must be mindful of two presumptions. The first presumption has federalist roots: "Congress does not cavalierly pre-empt state-law causes of action," thus a reviewing court must " 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). The second presumption is interpretive: a reviewing court should derive Congress's preemptive intent from the statute's language and its structure and purpose to arrive at "a reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* at 2251. It is within these guidelines that the Court analyzes K–H's argument and the preemption provisions of the HMTUSA.

### 2. Section 5125(b) Preemption

Section 5125, title 49 of the United States Code provides in pertinent part:

(b) Substantive differences.—(1) Except as provided in subsection (c) of this

section and unless authorized by another law of the United States, a ... requirement of a State ... about any of the following subjects, that is not substantively the same as a provision of this chapter, or a regulation prescribed under this chapter is preempted:

.    .    .    .    .

(E) the design, manufacturing, fabricating, marking, maintenance, reconditioning, repairing, or testing of a packaging or a container represented, marked, certified, or sold as qualified for use in transporting hazardous material.

K–H argues that Plaintiffs' common law claims seek to impose requirements that the statute expressly preempts.

The United States Court of Appeals for the First Circuit has noted that the term "requirement" can include state common law causes of action. *See Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559, 563 (1st Cir.1996) ("It was once an open question, but is now settled by the Supreme Court in *Cipollone* and *Medtronic*, that 'requirements' in this context presumptively includes state causes of action as well as laws and regulations.") Reading *Grenier* in conjunction with the plurality decisions in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), and *Medtronic*, this Court agrees with Magistrate Judge Lovegreen's determination that Plaintiffs' common law causes of action are synonymous with "requirement[s]" for purposes of § 5125. The proximate question is whether the statute preempts the common law requirements that Plaintiffs' suit seeks to impose. A thorough answer to this question requires an examination of the pertinent federal regulatory scheme.

a.  Applicable Regulations

Pursuant to 49 U.S.C. § 5103, the Secretary of Transportation has promulgated regulations that prescribe certain design specifications for cargo tanks that are used to transport hazardous materials like gasoline. The parties do not dispute that the model MC 306 is such a cargo tank; they do dispute which version of the regulations apply to the Tanker that is the subject of this litigation.

Magistrate Judge Lovegreen agreed with Plaintiffs' argument that the relevant regulations were those that existed in 1986 when Fruehauf constructed the Tanker. K–H argues in its objection to the Report and Recommendation that the current version of the regulations governs. The objects of this contest are 49 C.F.R. §§ 178.340–1 to 178.340–10 (1985) which propound the general design and construction requirements applicable to a model MC 306 cargo tank constructed on September 3, 1986.[2]

Before the magistrate judge, Plaintiffs argued that Fruehauf did not construct the Tanker in accordance with § 178.340–2(a) which provided: "Every cargo tank and vessel shall be designed and constructed in accordance with the best known and available practices in addition to the other applicable cargo tank specification requirements." Based upon that regulation, Magistrate Judge Lovegreen determined: "Plaintiffs' suit seeks to enforce one of the federal regulations, specifically, the best-practices provision that was contained in 49 C.F.R. § 178.340–2(a) (1988). The HMTUSA preemption provisions do not prohibit suits that seek to enforce the federal standards, so plaintiffs' suit is not preempted." K–H disagrees.

The Code of Federal Regulations no longer contains the detailed design regulations that once pertained only to model MC 306 cargo tanks. Those regulations, previously found at 49 C.F.R. §§ 178.340 to 178.341, have been replaced with regula-

---

**2.** Both the 1985 and the 1986 versions of the disputed regulations contain exactly the same language. The Court has cited the 1985 version of the regulations as the 1986 version of 49 C.F.R. was revised on November 1, 1986, approximately two months after the construction of the Tanker.

tions that apply to the newer DOT specification 406, 407, and 412 cargo tank motor vehicles. *See, e.g.,* 49 C.F.R. § 178.345 (1998). These changes do not mean that model MC 306 cargo tanks can no longer be used to transport hazardous materials. Pursuant to the regulations, a model MC 306 cargo tank can carry hazardous materials so long as it conforms to "an applicable specification in effect on the date the initial construction began." 49 C.F.R. § 180.405(b) (1998). Therefore, the Court will look to the regulations in place on September 3, 1986, the time the Tanker was manufactured, to determine whether the statute preempts Plaintiffs' cause of action.

### b. Analysis

Section 5125(b) expressly preempts any state requirement that would seek to impose a design, manufacture, or fabrication specification that is "not substantively the same" as a regulation issued pursuant to chapter 51 of the statute. K–H argues that Plaintiffs' common law claim seeks to impose such a requirement.

The regulations in effect on September 3, 1986, required all MC 306 cargo tanks to have specific kinds of accident damage protection. *See* 49 C.F.R. § 178.340–8 (1985); *see also* 49 C.F.R. § 178.341–1(a) (1985) ("Specification MC 306 cargo tanks must comply with the general design and construction requirements in § 178.340 in addition to the specific requirements contained in this section."). One such form of protection was overturn protection. Section 178.340–8(c) provided that all manhole closures "shall be protected from damage which will result in leakage of lading in the event of overturning of the vehicle by being enclosed within the body of the tank or dome attached to the tank or by guards." If the manufacturer chose to protect the manhole closures with guards, the regulations required that those guards "be designed and installed to withstand a vertical load of twice the weight of the loaded tank and a horizontal load in any direction equivalent to one-half the weight of the loaded tank." 49 C.F.R. § 178.340–8(c)(1). If the manufacturer decided to use more than one guard, each guard would have to carry a proportionate share of the load. *Id.* The regulations also required that every MC 306 cargo tank "be designed and constructed in accordance with the best known and available practices." 49 C.F.R. § 178.340–2(a) (1985).

### i. Technical Design Regulations

The parties agree that the Tanker was constructed with rails that satisfied the load bearing requirements set forth in § 178.340–8(c)(1). At oral argument, K–H intimated that this concession is fatal to Plaintiffs' claims. K–H reasons as follows: If § 178.340–8(c)(1) provides the only design criterion anent the rollover protection guards, and Plaintiffs have conceded that the Tanker satisfied this criterion, then Plaintiffs must prove their design defect claims by adducing evidence to demonstrate that something more than compliance with § 178.340–8(c)(1) was required of K–H to satisfy the legal duty that it may have owed Plaintiffs. K–H posits that any proof related to an additional requirement that is not now part of § 178.340–8(c)(1) would result in a design requirement that is necessarily "not substantively the same" as the basic requirement proffered by that regulation. Though conceptually clean, this reasoning is faulty as it presupposes that § 178.340–8(c)(1) provides the only design standard with respect to the guards that Fruehauf employed to protect the manhole closures.

A careful reading of the pertinent regulation suggests that the load bearing design requirement contained in § 178.340–8(c)(1) does not provide the only design requirement that pertains to model MC 306 cargo tanks. Section 178.340–8(c) provides in more general terms that the guards shielding the manhole closures must be designed so that they protect the closures "from damage which will result in leakage of lading in the event of overturn-

ing of the vehicle." 49 C.F.R. § 178.340–8(c). Thus, DOT's design regulations require that a manufacturer design guards that will both bear certain loads and protect against leakage of lading in the event of an overturn.

■ At oral argument, Plaintiffs' counsel suggested that he would proffer expert testimony at trial to prove that the configuration of the guards that Fruehauf used on the Tanker might permit objects to intrude upon the manhole closures thereby causing them to leak lading. To the extent that this theory of recovery seeks to enforce the provisions of § 178.340–8(c), the "not substantively the same" language of § 5125(b) does not preempt Plaintiffs' claims. *See Medtronic*, 116 S.Ct. at 2255 ("Nothing in § 360k denies Florida the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements."). As Justice O'Connor stated in *Medtronic*:

> Where a state cause of action seeks to enforce an FDCA requirement, that claim does not impose a requirement that is 'different from, or in addition to' requirements under federal law. To be sure, the threat of a damages remedy will give manufacturers an additional cause to comply, but the requirements imposed on them under state and federal law do not differ.

116 S.Ct. at 2264 (O'Connor, J., concurring in part and dissenting in part). In light of this determination one question remains.

The lingering question is whether under *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), K–H has satisfied its "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." K–H attempts to discharge its burden with an expert affidavit and a certificate of compli-

ance which, it suggests, demonstrate that Fruehauf designed the Tanker in accordance with § 178.340–8(c). Nevertheless, these materials do not demonstrate that Plaintiffs' proffered design is one that imposes requirements that are "not substantively the same" as the federal regulations. It is entirely plausible that there exists more than one design that can prevent leakage of lading and meet, but not exceed, the load requirements promulgated in the regulations. It is in this sense that Plaintiffs' design defect claims may proceed to enforce the regulations, leaving the preemption provisions of § 5125(b) inviolate.

This construction of § 5125(b) heeds the Supreme Court's admonition that Congress does not "cavalierly" preempt state law causes of action. *See Medtronic*, 116 S.Ct. at 2250. It also remains faithful to Congress's desire to achieve "*greater* uniformity," HMTUSA, Pub.L. No. 101–615, 104 Stat. 3244, at § 2 (1990) (emphasis added), in the area of hazardous materials transportation without offending the presumption that a federal enactment does not supersede the " 'historic police powers of the States … unless that [is] the clear and manifest purpose of Congress.' " *Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608 (quoting *Rice*, 331 U.S. at 230, 67 S.Ct. 1146). *See also Wood v. General Motors Corp.*, 865 F.2d 395, 420 (1st Cir.1988) (Selya, J., dissenting) ("I subscribe instead to the Court's teaching that '[t]he essence of our federal system is that within the realm of authority left open to them under the Constitution, the States must be equally free to engage in any activity that their citizens choose for the common meal, no matter how unorthodox or unnecessary anyone else—including the federal judiciary—deems state involvement to be.' ") (quoting *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 546, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)).

Because K–H has not satisfied its initial burden with respect to the precise issue presented by Plaintiffs' claim, the Court

denies its motion for summary judgment on this point.

ii.   Best Known and Available Practices

Plaintiffs allege that their common law claims seek to enforce the federal regulation that required the manufacturer to design and construct the Tanker "in accordance with the best known and available practices in addition to the other applicable cargo tank specification requirements." 49 C.F.R. § 178.340–2(a) (1985). K–H objects, arguing that Plaintiffs' suggested application of this regulation would be inconsistent with the HMTUSA's statutory purpose. The Court agrees with the defendant on this point.

The HMTUSA grants the Secretary of Transportation the authority to promulgate regulations "for the safe transportation of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5103(b). Those regulations apply to a person[3] who manufactures or fabricates "a packaging or a container that is ... certified, or sold by that person as qualified for use in transporting hazardous materials in commerce." 49 U.S.C. § 5103(b)(A)(iii). Pursuant to that authority, the DOT promulgated § 178.340–2(a), the "best known and available practices" regulation. The question is whether that regulation, applicable to this case by operation of the current regulations, *see supra* Part III.C.2.a, is inconsistent with the HMTUSA's desire to achieve "greater uniformity" and "consistency" with respect to the laws, regulations, and standards that govern the transportation of hazardous materials. *See* HMTUSA, Pub.L. No. 101–615, 104 Stat. 3244–45, at § 2 (1990).

In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court of the United States outlined a two-step test that reviewing courts must apply when construing an administrative agency's interpretation of a statute. The first question that a reviewing court must ask is "whether Congress has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. 2778. In this Court's estimation, the "precise question at issue" here is whether the HMTUSA grants the Secretary of Transportation the authority to subject cargo tank manufacturers, like Fruehauf, to the broad and imprecise legal duty to use "best known and available practices" when designing and constructing cargo tanks. Because it is unclear whether Congress granted the Secretary the authority to promulgate regulations that are not primarily technical pursuant to § 5103(b)(A)(iii), the Court must proceed to the second step of the *Chevron* analysis.

At stage two of the *Chevron* inquiry, the reviewing court "does not simply impose its own construction on the statute." 467 U.S. at 843, 104 S.Ct. 2778. Rather, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* Where, as here, Congress has given the agency the power to fill the statute's interstices with regulations, those regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843–44, 104 S.Ct. 2778; *see also Cohen v. Brown Univ.*, 101 F.3d 155, 173 (1st Cir.1996) (citing *Chevron*). Because this Court cannot conclude that the regulation is either arbitrary· or capricious, the only question is whether the regulation is "manifestly contrary to the statute." *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778.

■  At the outset of this opinion, the Court noted that § 2 of the HMTUSA contains a list of Congressional findings. In revising the HMTA, Congress explicitly stated that it hoped to cure problems inherent in a system that countenanced

---

**3.** The term "person" as used in § 5103 includes corporations like K–H and Fruehauf. *See* 49 U.S.C. § 5102(9) (incorporating by reference definition of "person" contained at 1 U.S.C. § 1).

"multiple and conflicting" state regulatory requirements by enacting federal standards that would simultaneously promote "consistency" in the laws and regulation governing the transportation of hazardous materials while achieving "greater uniformity" in that area. · *See* HMTUSA, Pub.L. No. 101–615, 104 Stat. 3244–45, at § 2 (1990). *See also Chlorine Inst., Inc. v. California Highway Patrol,* 29 F.3d 495, 496–97 (9th Cir.1994) ("major purpose" of HMTA and HMTUSA is development of "uniform national regulation" in field of hazardous materials transport); *Colorado Pub. Utils. Comm'n v. Harmon,* 951 F.2d 1571, 1575, 1580 (10th Cir.1991) (referring to uniformity as "the linchpin in the design of the statute" and recognizing Congressional desire to stress "the importance of uniform national regulations" under the HMTUSA); *National Tank Truck Carriers, Inc. v. Burke,* 608 F.2d 819, 824 (1st Cir.1979) ("[T]here is strong support for the notion that a primary Congressional purpose intended to be achieved through the [HMTA] was to secure a general pattern of uniform, national regulations . . . ."). The "best known and available practices" language at § 178.340–2(a) does not square with clearly articulated Congressional intent and is therefore manifestly contrary to the HMTUSA.

The suspect provision fails *Chevron* scrutiny because it purports to create a standard that is wholly inconsistent with Congress's desire to create a uniform set of regulations in the area of hazardous materials transport. In this Court's opinion, § 178.340–2(a) suggests only an aspirational expression of the regulating authority's purpose in developing a comprehensive regulatory scheme governing the transport of hazardous materials. The application of this provision's malleable standard to disputes like the one at bar would foster the creation of a heterogenous, ill-defined set of manufacturing duties that Congress specifically sought to eliminate when it passed the HMTUSA. The "best known and available practices" provision creates no discernible standard that is capable of uniform application; under *Chevron,* it is "manifestly contrary" to the HMTUSA.

In sum, Plaintiffs cannot pursue their claims under the "best known and available practices" rubric of § 178.340–2(a).

### 3. Section 5125(a) Preemption

The HMTUSA also contains two more general preemption provisions. Section 5125(a) provides as follows:

(a) General.—Except as provided in subsections (b), (c), and (e) of this section and unless authorized by another law of the United States, a requirement of a State . . . is preempted if—

(1) complying with a requirement of the State . . . and a requirement of this chapter or a regulation prescribed under this chapter is not possible; or

(2) the requirement of the State . . . as applied or enforced, is an obstacle to accomplishing and carrying out this chapter or a regulation prescribed under this chapter.

The Court's determination that Plaintiffs' tort suit seeks to enforce the applicable design regulations truncates what would otherwise be a detailed analysis of these statutory provisions. It is clear that a suit that seeks to enforce compliance with the relevant regulations does not fall within the strictures of § 5125(a)(1).

Under § 5125(a)(2), the question is whether Plaintiffs' lawsuit is an obstacle to carrying out the chapter or a regulation that proceeds from it. Under this standard, the HMTUSA preempts Plaintiffs' lawsuit if the suit imposes requirements that would impede the "accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). *See also Colorado Pub. Utils. Comm'n,* 951 F.2d at 1580 & n. 9 (quoting *Hines* and setting forth the parameters of the judicial analysis). This suit, which seeks to enforce the applicable

provisions of the federal regulations, satisfies the *Hines* test.

Uniformity and consistency in the laws governing the transport of hazardous materials are the "full purposes and objectives" of the HMTUSA. *Hines,* 312 U.S. at 67, 61 S.Ct. 399; *see also supra* Part III.B. K–H argues that this suit falls within the confines of § 5125(a)(2) because it would subject cargo tank manufacturers to manifold design standards that are neither uniform nor consistent. This argument proves too much as it would preempt any law suit seeking to enforce a regulation that is crafted with less than exact surgical precision. In this Court's estimation, the conjunctive operation of the substantive standards provided by the laws of products liability, negligence, and the applicable federal regulations will require plaintiffs to chart a careful course in attempting to prove either that a design or manufacturing defect or a breach of the relevant standard of care caused a particular injury.

This approach to plaintiffs' claims serves a number of salutary purposes: it assuages any fear that this kind of design defect claim will create a set of amorphous ad hoc requirements to which manufacturers must adhere; it embraces Congress's desire to promote greater uniformity (not complete uniformity) and consistency in the laws governing the transport of hazardous materials; and, it preserves, to a limited degree, this state's power to protect the general health and welfare of its citizenry. For these reasons, K–H's argument that 49 U.S.C. § 5125(a)(2) preempts Plaintiffs' claims must fail.[4]

**D. Other Matters**

K–H's objection to the Report and Recommendation also invites this Court to revisit Magistrate Judge Lovegreen's determination that the supplemental affidavit of Plaintiffs' expert raised a genuine issue of material fact sufficient to withstand the summary judgment ax. Because the Court finds that K–H has failed to satisfy its initial burden pursuant to Fed.R.Civ.P. 56, the Court need not probe the sufficiency of the affidavit that Plaintiffs' expert submitted. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505 ("The movant has the burden of showing that there is no genuine issue of fact....").

**IV. Conclusion**

For the reasons stated herein, the Court adopts Magistrate Judge Lovegreen's recommendation that the defendant's motion for summary judgment be denied. The reader should note that the Court has arrived at that conclusion for reasons which differ substantially from those proffered in the Report and Recommendation of May 14, 1998.

SO ORDERED.

---

4. Because Congress has explicitly and precisely defined the scope of its preemptive intent in the text of the HMTUSA, the Court does not address those arguments that discuss the doctrines of implied preemption. As the Supreme Court of the United States stated in *Cipollone,* 505 U.S. at 517, 112 S.Ct. 2608:
When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' 'there is no need to infer congressional intent to preempt state laws from the substantive provisions' of the legislation.
(Citations omitted) (quoting *Malone v. White Motor Corp.,* 435 U.S. 497, 505, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978), and *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 282, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987)).