# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2182

_____

Kim Netland,                           *
                                       *
    Appellant,                  *
                                       *     Appeal from the United States
  v.                                 *     District Court for the
                                       *     District of Minnesota.
Hess & Clark, Inc.,                    *
                                       *
    Appellee.                   *

_____

Submitted:   December 14, 2001
Filed:   March 26, 2002

_____

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

Kim Netland brings this action against Hess & Clark, Inc. ("Hess"), the manufacturer of the pesticide KenAg Bovinol ("Bovinol"), claiming damages for injury resulting from Netland's use of Bovinol on his horses. The district court[1] granted Hess's motion for summary judgment holding that Netland's claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq., because they are an impermissible challenge to Bovinol's label. For the reasons stated below, we affirm.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

## I.

Netland, in the summer of 1994, following his junior year of high school, used Bovinol to control flies on his family's three horses. Margaret Netland, Netland's mother, purchased the pesticide in June 1994, from a local retail feed store for the purpose of minimizing the risk of injury to Netland from the unpredictable behavior of horses due to the annoyance of flies. The sales clerk informed Mrs. Netland that the pesticide would work for horses. Prior to giving Netland the pesticide, Mrs. Netland read the warning label and wore plastic gloves to pour the pesticide into a bathroom cleaner spray bottle. Thereafter, Netland sprayed the pesticide on his horses three to four times a week over a six-week period. Prior to riding, Netland sprayed each horse with eight to ten squirts of the pesticide and would normally ride the horse within a minute after spraying it with the pesticide. Netland did not wear any protective clothing or equipment when he used the pesticide and did not read the Bovinol label. Netland believes that he got the pesticide on his skin by touching the horses because his clothes were damp after riding.

In mid-August 1994, Netland began high school football practice and began to experience fatigue and bruising. On September 28, 1994, Netland collapsed on his way to school and was taken to his family physician, Dr. Thabes. Realizing that Netland had a severe blood problem, Dr. Thabes transferred Netland to a hematologist in Fargo, North Dakota, where he was diagnosed with acquired aplastic anemia.[2] Over the next year, Netland's treatment consisted of large doses of steroids and approximately thirty-five blood transfusions. As a result of this treatment, one of Netland's hips failed and was replaced with a prosthesis. Netland's other hip is also at risk.

---

[2]Aplastic anemia is an anemia characterized by defective function of the bone marrow, such that there is a failure to properly form all types of blood cells.

Bovinol is a registered insecticide with the Environmental Protection Agency ("EPA") under FIFRA and carries an EPA-approved label. Dichlorvos ("DDVP"), the active ingredient in Bovinol, is an organophosphate, which is absorbed into the human body by ingestion, inhalation, and skin absorption. The Bovinol label describes the approved and lawful uses of the pesticide, including use on cattle, in animal buildings (horse barns, shelter sheds, dairy barns, milk sheds), in poultry houses, dog kennels, and outdoor uses (picnic grounds, loading docks, outdoor latrines, parking areas, refuse areas, around service stations, open-air drive-ins, outdoor ice cream stands, and garbage collection and disposal areas). The label does not expressly state that Bovinol may be used on horses. The Bovinol label also contains a precautionary instruction and warning.[3]

On July 1, 1999, Netland filed a three-count complaint against Hess alleging (1) strict liability in that Bovinol was defectively designed and unreasonably dangerous, (2) failure to warn users of the dangerous characteristics inherent in the

---

[3]Specifically, the warning contained on the Bovinol label states:

**PRECAUTIONARY STATEMENTS**
**HAZARDOUS TO HUMANS**
**AND DOMESTIC ANIMALS**
**WARNING**

May be fatal if swallowed, inhaled or absorbed through the skin or eyes. Rapidly absorbed through skin and eyes. Do not get into eyes, on skin or on clothing. Do not breathe vapor or spray mist. Wash thoroughly with soap and water after handling and before eating or smoking. Do not contaminate feed, water, foodstuffs, milk or milking utensils.

Wear clean natural rubber gloves, protective clothing, and goggles, faceshield or equivalent. Wear a pesticide respirator jointly approved by the Mining Enforcement and Safety Administration (MESA) and the National Institute for Occupational Safety and Health (NIOSH) under the provisions of 30 CFR Part 11. Wear impervious footwear or protective covers as shoes, boots and other articles made of leather or similar porous materials may be dangerously contaminated.

Bovinol product, and (3) negligence and breach of warranty in that Hess failed to use reasonable care in the design, manufacture, and sale of Bovinol. On January 19, 2001, Hess moved for summary judgment asserting federal preemption under FIFRA and also that Netland failed to offer admissible proof of causation. Hess also filed a motion to exclude the opinion testimony of several of Netland's expert witnesses.

The district court granted Hess's motion for summary judgment without reaching the issue of causation or the admissibility of the testimony of Netland's expert witnesses. In particular, the district court found that each of Netland's claims is essentially an attack on Bovinol's EPA-approved label, and therefore is preempted by FIFRA. Netland v. Hess & Clark, Inc., 140 F. Supp. 2d 1011, 1017-19 (D. Minn. 2001). Netland timely appealed.

## II.

A grant of summary judgment is reviewed de novo. Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 606 (8th Cir. 1999). Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, here Netland, the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. See also Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In addition, preemption is a question of law reviewed de novo. Nat'l Bank, 165 F.3d at 607.

## A.

Under FIFRA, all pesticides sold in the United States must be registered with the EPA. See 7 U.S.C. § 136a(a) (1994). When applying for registration, manufacturers must submit draft label language addressing a number of topics including ingredients, directions for use, and any information of which they "are aware regarding unreasonable adverse effects of the pesticide on man or the

-4-

environment." 40 C.F.R. § 152.50(f)(3) (2001). Prior to registering a pesticide, the EPA must find that its labeling complies with FIFRA's requirements, such as a determination that the pesticide is not misbranded, and that when the pesticide is used in accordance with its labeling that it will perform its intended function without an unreasonable adverse effect on the environment. See 7 U.S.C. § 136a(c)(5) (1994). Finally, FIFRA contains an express preemption clause, which provides that a state "shall not impose or continue in effect any requirements for labeling . . . in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b) (1994).

In National Bank, we held that once a label is approved, FIFRA expressly provides a defense, arising from preemption, against certain state law claims. 165 F.3d at 608. Specifically, we held that FIFRA preempts state common law claims for "'inadequate labeling or failure to warn.'" Id. (quoting Bice v. Leslie's Poolmart, Inc., 39 F.3d 887, 888 (8th Cir. 1994)). Moreover, we stated:

> It is immaterial whether an inadequate labeling or failure to warn claim is brought under a negligence or products liability theory. If a state law claim is premised on inadequate labeling or a failure to warn, the impact of allowing the claim would be to impose an additional or different requirement for the label or packaging.

Id. (footnote omitted). Common law claims for breach of express warranty also are preempted by FIFRA. Id. (citing Welchert v. Am. Cyanamid, Inc., 59 F.3d 69, 73 (8th Cir. 1995)).

Netland concedes that our decision in National Bank preempts his state law claims based on labeling or packaging requirements in addition to or different from those required under FIFRA. Nevertheless, Netland asks us to revisit our prior decisions insofar as they hold that state law claims based on failure to warn are preempted by FIFRA. Netland maintains that a revisiting is necessitated by the Supreme Court's decision in Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996), and an

amicus curiae brief submitted by the United States Department of Justice, representing the EPA, filed in Etcheverry v. Tri-Ag Serv., Inc., 993 P.2d 366 (Cal. 2000), which articulated the government's position that FIFRA does not preempt any state law theories of liability, including failure to warn claims that implicate pesticide labels. In addition, Netland draws our attention to two recent state court decisions finding failure to warn claims not preempted in light of these recent developments. See Sleath v. W. Mont Home Health Servs., Inc., 16 P.3d 1042, 1053 (Mont. 2000); Brown v. Chas. H. Lilly Co., 985 P.2d 846, 853 (Ore. 1999). The law is well established, however, that this court may not overrule one of its prior decisions unless it does so en banc. Minn. Citizens Concerned for Life v. FEC, 113 F.3d 129, 131 (8th Cir. 1997). Thus, until modified or overruled by the court en banc, National Bank is the law of this circuit. Accordingly, Netland's failure to warn and breach of warranty claims are preempted by FIFRA.[4]

## B.

Next, Netland contends that his claims alleging strict liability and negligence fall outside the state law causes of action that are preempted by FIFRA. He argues that FIFRA preempts only state law claims that directly challenge the product label; therefore, FIFRA does not preempt his claims that Bovinol was defectively designed

---

[4]At least two of our sister circuits have concluded that the established interpretation of the FIFRA preemption clause is unchanged by the Supreme Court's decision in Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996). See, e.g., Grenier v. Vt. Log Bldgs., Inc., 96 F.3d 559, 563 (1st Cir. 1996) ("It . . . is now settled by the Supreme Court in Cipollone [v. Liggett Group, Inc., 505 U.S. 504 (1992)] and Lohr, that 'requirements' in this context presumptively includes state causes of action as well as laws and regulations."); Hawkins v. Leslie's Pool Mart, Inc., 184 F.3d 244, 250 (3d Cir. 1999) ("even assuming that FIFRA is analogous to the [MDA] addressed by the Supreme Court in Medtronic, contrary to [plaintiff's] assertions, we do not read that case as standing for the overarching premise that tort claims fall outside 'preempted requirements'.").

and unreasonably dangerous. The district court disagreed because it concluded that Netland failed to produce any evidence of errors in the manufacture of Bovinol other than the adequacy of the warning. Netland, 140 F. Supp. 2d at 1017. Moreover, the district court found that Netland's liability expert, Dr. Lipsey, testified that Bovinol is safe if properly used and distributed with appropriate labeling, and therefore, Netland failed to produce any evidence demonstrating that Bovinol is unreasonably dangerous. Id. at 1017-18. Thus, the district court concluded that Netland's claims alleging strict liability and negligence were nothing more than a challenge to Bovinol's label for failure to warn against using the pesticide on horses before riding them. Id. at 1017-19.

On appeal, Netland argues that the district court's decision was in error because his complaint asserts a claim for defective design, and therefore is not preempted by FIFRA. We agree with Netland that defectively manufactured or designed products properly labeled under FIFRA remain subject to state regulation, in the form of common law or other claims. Nevertheless, "if the state law claim is premised on inadequate labeling or a failure to warn," which results in the imposition of additional or different labeling requirements, the claim is nonetheless preempted regardless of the guise under which the claim is presented. Nat'l Bank, 165 F.3d at 608. Thus, our task is to determine whether Netland's claims are essentially a challenge to Bovinol's label or the overall design of the pesticide. To guide our analysis, we must ask whether in seeking to avoid liability for any error, would the manufacturer choose to alter the label or the product. See Worm v. Am. Cyanamid Co., 5 F.3d 744, 747-48 (4th Cir. 1993) (line between mislabeling and defective design may not always be clear but may be resolved by asking whether manufacturer would alter the product or the label). After careful review of the entire record, we agree with the district court and hold that Netland's claims are preempted by FIFRA because they are an impermissible challenge to the pesticide's label.

Netland contends that his claim is not preempted based on Dr. Lipsey's expert testimony that Bovinol was defectively designed and unreasonably dangerous

because it contained DDVP as one of the active ingredients in its formula. In particular, Netland asserts that Dr. Lipsey testified that a safer and more effective alternative exists to DDVP, that being pyrethrum. We disagree with Netland's characterization of Dr. Lipsey's testimony. Dr. Lipsey did not testify that the inclusion of DDVP makes Bovinol defective or unreasonably dangerous. In fact, Dr. Lipsey testified that Bovinol is an EPA-registered and approved product that can be safely used under appropriate circumstances. Dr. Lipsey's testimony merely indicated that Dr. Lipsey personally sprays his horses prior to riding them with pyrethrum, that he personally recommends pyrethrum for horses, and that most people use pyrethrum for horses. It is illogical to conclude that Bovinol is defectively designed or unreasonably dangerous because a substitute product might be the preferred pesticide for horses.

Dr. Lipsey's remaining complaints with Bovinol all directly challenge the pesticide's label. First, Dr. Lipsey stated "[a] prudent manufacturer would have put the fact that [Bovinol] can affect bone marrow; that this . . . can cause leukemia [on the label]."[5] Dr. Lipsey's second complaint is that the label is not specific about the parameters of using the product on horses. In particular, Dr. Lipsey testified, "[the label does not say] 'Do not apply to horses.' They said okay to horse barns and okay to pests that get on horses, but they didn't exclude horses, so you can assume that you can apply it to horses." Dr. Lipsey's final complaint with Bovinol also concerns the pesticide's label, but in this instance, he opines that the label's instructions to the user to use personal protective equipment is "overkill," and the label should merely state "avoid breathing the vapors" or "avoid getting it on your skin." While Dr. Lipsey's complaints with Bovinol may indeed create genuine issues of fact, they nonetheless are insufficient to avoid summary judgment because they fail to offer any evidence of a design defect unrelated to the label. Thus, Netland's claims are preempted by FIFRA.

---

[5]Elaborating on this point, Dr. Lipsey further testified that the label should include information about chronic health effects so that the user could decide whether they wanted to use it and could handle it in a safe manner.

## III.

Because we find that the premise of each of Netland's claims is Bovinol's label and is therefore preempted by FIFRA, we affirm the well-reasoned and thorough opinion of the district court granting summary judgment in favor of Hess.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.