**Wayne and Janet WUEBKER,
Plaintiffs,**

v.

**WILBUR–ELLIS CO., Defendant.**

No. 1:02–cv–40009.

United States District Court,
S.D. Iowa,
Western Division.

Sept. 27, 2004.

Nicholas V. Critelli, Jr., Critelli & Associates PC, Des Moines, IA, for Plaintiffs.

J. Michael Weston, Moyer & Bergman, Cedar Rapids, IA, Lawrence S. Ebner, McKenna, Long & Aldridge LLP, Washington, D.C., James P. Craig, Moyer & Bergman, Cedar Rapids, IA, for Defendants.

## ORDER

GRITZNER, District Judge.

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. Hearing was held on the motions on September 13, 2004. Attorney Nicholas Critelli appeared for Plaintiffs, and attorney Michael Weston and attorney Lawrence Ebner appeared for Defendant. The matter is now fully submitted for review. For the reasons discussed below, Plaintiffs' Motion for Partial Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

## SUMMARY OF MATERIAL FACTS

On or about April 18, 2000, Plaintiff Wayne Wuebker purchased from Wilfarm, L.L.C., the product Agrox Premiere with Apron© ("Agrox Premiere") for use in his farming operation located in Afton, Iowa.[1]

---

1. In their Complaint, Plaintiffs alleged that Defendant Wilbur–Ellis marketed the product to the farming community through the marketing and distribution services of Defendant

Agrox Premiere is an agri-chemical designed as an insecticide for use by farmers as a hopperbox seed treatment. Plaintiff Wayne Wuebker claims to have used the product in accordance with the instructions on the label[2] and that immediately thereafter he became seriously ill, nearly losing his life. Plaintiff Wayne Wuebker asserts that he has been rendered permanently injured and that his injuries were proximately caused by a defect in the design of Agrox Premiere.

Plaintiff Wayne Wuebker and his wife, Plaintiff Janet Wuebker ("Plaintiffs"), allege that Agrox Premiere was defective in its design because it contained no distinctive odor so as to alert the consumer of its presence in the environment and contained no distinctive color, feel, or irritant so as to alert the consumer of its presence on the consumer's body. Plaintiffs contend these alleged defects rendered the product Agrox Premiere unreasonably dangerous because its presence was concealed from the consumer, rendering Mr. Wuebker unable to determine its presence on his body, unable to comply with the "Statement of Practical Treatment" found on the product's label, unable to comply with the "User Safety Recommendations" as found on the product's label, and unable to exercise ordinary care for his self-protection. Plaintiffs further assert that there was no change in the condition of the product from the time of its manufacture by Wilbur–Ellis to its use by Mr. Wuebker and that the alleged product defects were the proximate cause of Plaintiffs' injuries and resulting damages.

Plaintiffs assert claims of product liability (count one), implied warranty of fitness for a particular purpose (count two), implied warranty of merchantability (count three), recklessness (count four), and joint and several liability (count five).[3] Plaintiffs assert that all of their claims arise from Defendant's failure to include a distinctive color, odor, feel, or irritant to Agrox Premiere so as to alert the consumer of its presence.

Wilbur–Ellis denies that Agrox Premiere is defective. Wilbur–Ellis argues that Mr. Wuebker was at fault in causing his own injuries and damages, asserting that Plaintiffs' claims for damages should therefore be reduced or barred pursuant to Iowa Code Chapter 668. Wilbur–Ellis further asserts in its Amended Answer that Plaintiffs' claims are barred and preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136v ("FIFRA").

On March 25, 2004, Plaintiffs took the initiative on the preemption issue and moved for partial summary judgment, requesting that Defendants' affirmative defense based on FIFRA be dismissed or stricken from the record. Plaintiffs assert that they make no claim based upon the inadequacy of the Agrox Premiere label, but instead, their claims are based upon a defect in the design of the chemical product itself. Plaintiffs argue that the dark gray coloring of Agrox Premiere is the same color as the dark grey agricultural soil present in the environment in which the product is intended to be used, and it is expected that a contrasting color would be used so as to alert the user of the

Wilfarm, L.L.C. On August 19, 2004, Plaintiffs moved to dismiss, without prejudice, their claims against Defendant Wilfarm. On August 20, 2004, an Order was entered dismissing Defendant Wilfarm from the case.

2. Wayne Wuebker's deposition testimony demonstrates that he did not comply with the personal protective equipment ("PPE") requirements located on the product's label.

3. Count five was rendered moot by the dismissal of Defendant Wilfarm from this case.

product's presence on his person. Plaintiffs further claim that due to the extreme toxicity of the chemical in question, the alleged defects in design pose an unreasonable risk of harm to the foreseeable user. Plaintiffs contend that because no claim is based upon the label or the inadequacy of the labeling of the product, FIFRA is inapplicable as a matter of law and cannot form the basis for an affirmative defense to Plaintiffs' causes of action. Defendant resists Plaintiffs' Motion for Partial Summary Judgment, arguing Plaintiffs' claims are based solely on a failure to warn and are therefore expressly preempted by FIFRA.

On July 9, 2004, Defendant filed a Motion for Summary Judgment. Defendant contends that because Plaintiffs' claims are based solely on a failure to warn, they are expressly preempted by FIFRA. Defendant states that because Plaintiffs' claims are both expressly and impliedly preempted, they cannot be asserted in this action and must be dismissed. Plaintiffs resist Defendant's Motion for Summary Judgment, asserting that their claims are not explicitly pre-empted by FIFRA because they do not amount to a constructive challenge to Agrox Premiere's label. Plaintiffs contend that Defendant's position that it would simply alter the label rather than change the design of the product is not solely determinative. Plaintiffs further assert that their claims are not implicitly pre-empted by EPA regulation 40 C.F.R. § 153.155(b), stating that there is no direct conflict between this EPA regulation and Plaintiffs' state law claims, and the EPA dye exemption has no relevance to the issue in this matter.

## APPLICABLE LAW AND DISCUSSION

### A. Standard of Review

Summary judgment is a drastic remedy, and the Eighth Circuit has recognized that it "must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1029 (8th Cir.2000).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548); *see also Shelter Ins. Cos. v. Hildreth,* 255 F.3d 921, 924 (8th Cir.2001); *McGee v. Broz,* 251 F.3d 750, 752 (8th Cir.2001). Once the moving party has carried its burden, the opponent must show that a genuine issue of material facts exists. *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.,* 165 F.3d 602, 607 (8th Cir.1999). The Court gives the nonmoving party the benefit of all reasonable inferences and views the facts in the light most favorable to that party. *de Llano v. Berglund,* 282 F.3d 1031, 1034 (8th Cir.2002); *Pace v. City of Des Moines,* 201 F.3d 1050, 1052 (8th Cir.2000); *Prudential Ins. Co. v. Hinkel,* 121 F.3d 364, 366 (8th Cir.1997).

"Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled

to judgment as a matter of law." *Shelton v. ContiGroup Companies, Inc.*, 285 F.3d 640, 642 (8th Cir.2002) (citing *Henerey v. City of St. Charles*, 200 F.3d 1128, 1131 (8th Cir.1999)). Summary judgment should not be granted if the Court can conclude that a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991). In light of these standards, the Court considers the present motion.

### B. Preemption Arising Under FIFRA

"FIFRA creates a comprehensive scheme for the regulation of pesticide labeling and packaging." *Nat'l Bank of Commerce of El Dorado, Ark.*, 165 F.3d at 607 (citing *Welchert v. Am. Cyanamid, Inc.*, 59 F.3d 69, 71 (8th Cir.1995)). "Under FIFRA, all pesticides sold in the United States must be registered with the EPA." *Netland v. Hess & Clark, Inc.*, 284 F.3d 895, 898 (8th Cir.2002). Manufacturers are required to submit draft label language to the EPA addressing topics such as the ingredients of the product, directions for the product's use, and any other information of which the manufacturer is aware regarding "unreasonable adverse effects of the pesticide on man or the environment." 40 C.F.R. § 152.50(f)(3) (2001). Once the EPA finds that the manufacturer's labeling complies with FIFRA's requirements, the EPA will register the pesticide. The manufacturer is required to affix the EPA approved label to the product.

Once a label is approved by the EPA, FIFRA expressly provides a defense, arising from preemption, against certain state law claims which are based on the product's labeling. *Netland*, 284 F.3d at 898

(citing *Nat'l Bank of Commerce of El Dorado, Ark.*, 165 F.3d at 608).

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter... Such State shall not impose or continue in effect any requirements for labeling or pack-aging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v(a-b). This express preemption clause prohibits a plaintiff from bringing state law claims attacking the adequacy of a product's labeling or alleging failure to warn. *Netland*, 284 F.3d at 898.

Plaintiff correctly points out that FIFRA does not provide a total bar to state regulation. "[T]he Act does not provide a total bar against state regulation. FIFRA only restricts state-based demands that impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [7 U.S.C. § 136v(b) ]." *Nat'l Bank of Commerce of El Dorado, Ark.*, 165 F.3d at 608 (quoting 7 U.S.C. § 136v(b)) (quotations omitted); *see also Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 602, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991) (in concluding that FIFRA did not pre-empt a town ordinance requiring a permit for the application of pesticide, the court noted that "local use permit regulations—unlike labeling or certification—do not fall within an area that FIFRA's 'program' pre-empts or even plainly addresses.").

In determining whether Plaintiffs' claims are preempted by FIFRA, the Court must closely examine the underlying premise of the claims; the legal theory under which Plaintiffs' claims are brought is not dispositive.

It is immaterial whether an inadequate labeling or failure to warn claim is brought under a negligence or products liability theory. If a state law claim is premised on inadequate labeling or a failure to warn, the impact of allowing the claim would be to impose an additional or different requirement for the label or packaging.

*Netland,* 284 F.3d at 898 (quoting *Nat'l Bank of Commerce of El Dorado, Ark.,* 165 F.3d at 608); *see also Grenier v. Vermont Log Bldgs., Inc.,* 96 F.3d 559, 564 (1st Cir.1996) ("merely to *call* something a design or manufacturing defect claim does not automatically avoid FIFRA's explicit preemption clause."); *Hardin v. BASF Corp.,* 290 F.Supp.2d 964, 968 (E.D.Ark. 2003) ("Under the law of this Circuit, whether a plaintiff's claim is preempted under § 136v(b) does not depend on the label a plaintiff attaches to his claim"); *In re StarLink Corn Prod. Liab. Litig.,* 212 F.Supp.2d 828, 836 (N.D.Ill.2002) ("plaintiff cannot avoid [FIFRA] preemption by artful pleading"); *Kuiper v. Am. Cyanamid Co.,* 913 F.Supp. 1236, 1242 n. 1 (E.D.Wis.1996), *aff'd,* 131 F.3d 656 (7th Cir.1997), *cert. denied* 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998) (reasoning preemption should not turn on the name a plaintiff gives to his cause of action); *Traube v. Freund,* 333 Ill.App.3d 198, 266 Ill.Dec. 650, 775 N.E.2d 212, 217 (2002) ("FIFRA preemption clearly does not turn upon the name a plaintiff gives to his or her cause of action.").

Thus, although Plaintiffs' claims are cloaked in the legal garb of product liability, implied warranty of fitness for a particular purpose, implied warranty of merchantability, and recklessness, if these claims are actually premised upon the adequacy of the product's labeling or upon a failure to warn, the claims are preempted by FIFRA. Plaintiffs have asserted in their Complaint that each of their claims arise from Defendant's failure to include a distinctive color, distinctive odor, distinctive feel, or irritant to Agrox Premiere so as to alert the consumer of the product's presence. Plaintiffs contend that their claims are wholly independent of any examination of, or alteration to, Agrox Premiere's label, arguing that the inadequate warning in this case stems not from the content of the label, but from the color of the product itself. Plaintiffs state that Defendant's product is like natural gas without the added odor, in that its presence is hidden, and the user is ambushed.[4]

Defendant argues that Plaintiffs' claims are based solely on a failure to warn and are therefore preempted by 7 U.S.C. § 136v(b). Defendant contends that although Plaintiffs couch their suit as being based on a design defect claim, the claims necessarily challenge the adequacy of the warnings given by Wilbur–Ellis on the EPA-approved labeling for Agrox Premiere.

In determining whether Plaintiffs' claims are based on the adequacy of the Agrox Premiere label or based on a failure to warn, the Court examines "whether in

---

4. The odorization of natural gas provides an interesting but imprecise analogy. No warning label or product literature could begin to provide the necessary warning that a dangerous and odorless gas is present. The presence of odorless natural gas cannot be appreciated. Even the person who knows natural gas is in the area would normally have no reason to anticipate the gas had escaped from its containment. The farmer applying agricultural chemicals knows both that the potentially hazardous material is present and that it will be removed from its protective container. The farmer can be warned about the potential hazards, including the similarity of color and consistency to soil, and the means of personal protection.

seeking to avoid liability for any error, would the manufacturer choose to alter the label or the product." *Netland,* 284 F.3d at 900 (citing *Worm v. Am. Cyanamid Co.,* 5 F.3d 744, 747–48 (4th Cir.1993)). Defendant asserts that it is reasonable to assume that it would have altered the product's label to add an additional warning, rather than alter the composition of the product, in order to avoid liability for the design defect alleged by Plaintiffs.

Sureco, Inc., an end-use pesticide formulator, manufactured the Agrox Premiere that was used by Plaintiff Wilbur Wuebker. In support of its claim that it would have chosen to alter the label instead of the product itself, Defendant has provided a detailed explanation regarding the manufacture of Agrox Premiere in the form of a sworn affidavit by Richard Dennis, Sureco's general/production manager at the time the Agrox Premiere was produced by Sureco for Defendant. Plaintiffs do not contest the information contained in Dennis' affidavit.

Dennis indicated Sureco would manufacture a product like Agrox Premiere by combining in a ribbon blender the necessary ingredients according to the product's formula. Sureco did not have a ribbon blender that was dedicated solely to producing Agrox Premiere, therefore any blender used to produce the insecticide required a thorough cleaning after it was used due to quality and safety control issues. Dennis further attested that adding a dye to the Agrox Premiere product would have significantly increased the cost and time involved in Sureco's formulation of the product. Dennis indicated that dyes are designed to be adherent, and a dye would have thoroughly coated the inner workings of the ribbon blender. Even extremely small amounts of dye left in the equipment could visibly stain other chemical products formulated in the same blender, or stain the blender itself; therefore, if such a dye was used, any blender used in the manufacture of Agrox Premiere would have to be "super cleaned" to make certain that other products subsequently formulated in that ribbon blender were not contaminated with any dye residue. Dennis indicated that during this cleaning process, the blenders would be rendered unavailable to formulate any other products, thereby disrupting Sureco's manufacturing operations, which function on a tight schedule. Dennis indicated that the substantial costs of the down time involved with using a dye would have caused Sureco to either decline to formulate Agrox Premiere with a dye or to pass the increased costs on to Defendant.

Joe Mullinax, the manufacturing director for Defendant, also provided a sworn affidavit. Mullinax, who has spent forty-nine years in the agricultural chemicals production business, attested that because of the substantial equipment cleaning and related costs described by Dennis, it would not have been economically feasible for Defendant to have added a dye to Agrox Premiere to give it the type of distinctive color the absence of which Plaintiffs contend renders the product defective. Defendant states that instead, it would have chosen to alter the label, for example, by seeking the EPA's permission to add a warning to the label which would warn applicators about the product's dark gray color.

Plaintiffs respond by asserting that altering the label so as to incorporate the coloring of the product would not have rendered the product any safer for use. Plaintiffs argue that no warning is effective, no matter how it is formulated or expressed, if the product itself is inappropriately designed so that the end-user is unable to heed the warnings on the label. In addition, Plaintiffs assert that adding a

dye to a product such as Agrox Premiere can be accomplished without added cost if the process is carefully designed. In support of this assertion, Plaintiffs point to the following deposition testimony of Dr. Kenneth H. Brown:

Q. Do you know, Doctor, of any particular problems the manufacturer might have in adding a dye to a product such as Agrox Premiere as it relates to the production of other products in a particular manufacturing facility?

A. Are you referring to the contamination of products that—

Q. Correct.

A. —are made in the same equipment?

Q. Correct.

A. I don't know what their procedures are for cleaning between batches. I do know that there are ways and means of achieving this though.

Q. At added cost, correct?

A. Sometimes at added costs. Sometimes by being particularly smart in how you design the processes that you're doing. I've spent a fair amount of time in the paint and coatings industry where color cycling is an important consideration, and it can be done without added costs if one is carefully designing the process.

Plaintiffs assert that Dr. Brown's testimony adds further support to Plaintiffs' argument that this is a genuine design-defect claim. Plaintiffs also claim that the disagreement relating to the economic feasibility of altering the design of Agrox Premiere, rather than altering its label, raises a genuine factual dispute between the parties that makes this case unsuitable for summary judgment.

Dr. Brown indicated in his testimony that he possessed no information regarding whether it would have been commercially feasible for Defendant to add a colorant or dye to Agrox Premiere, but that his experience told him it would not be a difficult hurdle to overcome. Dr. Brown subsequently indicated he knew nothing about the process whereby Agrox Premiere was manufactured, how a colorant is added to any agricultural hopperbox product during its manufacture, or how an agricultural pesticide, herbicide, or fungicide manufacturer goes about cleaning its manufacturing equipment after it adds a dye or colorant to the product it is formulating.

The testimony of Dr. Brown does little to bolster the argument that Defendant would not have chosen to alter the Agrox Premiere label. Dr. Brown's testimony only goes to the potential feasibility of adding the color, indicating it is possible adding a dye could be done without added costs if the process is carefully designed. The affidavit of Dennis makes clear that given the contamination and safety issues, adding a dye to Agrox Premiere would have increased manufacturing costs. Dr. Brown's testimony, even if assumed of significant weight for purposes of the current motions, is collateral to and does not create a genuine issue of fact on the question of whether this is a warning or design defect claim.

Unlike the natural gas analogy, the end user of this product is specifically aware that the potentially harmful material will be liberated from its container during the normal application process. Thus, in the general sense, the consumer creates his own "notice of presence" by his actions, alerting to the potential that he could come in direct contact with the substance. The manufacturer has already elected to warn the consumer by advising of the need to wear PPE; it is therefore reasonable and probable that before the manufacturer

would go to the trouble of altering the product's design and taking on the expenses associated with such a change, the manufacturer would address the "notice of presence" issue by adding to the label's warning to further explain to the consumer the importance of complying with the PPE requirements due to the fact that it may not be readily apparent if the product is actually on your person. It is also logical that an explicit label warning advising the consumer of the dark gray color of the product would, prior to use of the product, put the consumer on notice of the product's coloring and the ultimate importance of complying with the PPE requirements.

"The line between a claim for mislabeling and a claim for a defective product is razor thin, and can turn on 'whether one could reasonably foresee that the manufacturer, in seeking to avoid liability for the error, would choose to alter the product or the label.'" *Ackerman v. Am. Cyanamid Co.*, 586 N.W.2d 208, 214 (Iowa 1998) (quoting *Worm,* 5 F.3d at 747). In the present case, it seems clear that Defendant would simply add to the label a warning regarding the inability to easily recognize the presence of the product and the importance of complying with the PPE requirements, rather than redesign Agrox Premiere in order to add a dye to the product.

A claim for failure to warn based solely upon the failure of the product composition itself to provide warning poses a unique legal issue that has been addressed by only one other court. *Brunault v. S.C. Johnson & Son, Inc.* addressed the matter of warning of a product's dangerous presence on a consumer's person by adding a

chemical irritant to the product. *Brunault v. S.C. Johnson & Son, Inc.* 2002 WL 32538419, at *1 (D.Mass.2002). In *Brunault,* the plaintiff alleged that OFF! brand Yard and Deck Area Repellant II insecticide was defective because it did not contain a chemical irritant which would serve to alert a person to its presence if applied to the skin. *Id.* The plaintiff had mistakenly applied the insecticide directly to his skin and suffered severe injuries as a result.[5] *Id.* In finding that the plaintiff's state law design defect claim was preempted by FIFRA, the court noted,

> To require the chemical warning that the plaintiff requests would be to call for an additional warning beyond the label's EPA-approved warnings, and would give the clear implication that the label's warnings are inadequate. Because the Court concludes that plaintiff has again only presented an attack upon the product's allegedly inadequate warnings against topical use, the Court concludes that the plaintiff's claim arises from the product's labeling and is therefore preempted by FIFRA.

*Id.* at *3. Presumably, the chemical warning the *Brunault* plaintiff requested would serve to alert consumers who mistakenly apply the insecticide to their skin that something is amiss, and the consumer, upon sensing the chemical irritant, would either read the product's labeling for information or otherwise promptly react to avoid any harmful effects from the misuse of the product.

■ Similarly, Plaintiffs seek a chemical warning of the product's presence in the form of a marker imbedded within the product itself. The absence of such a

---

**5.** Had the plaintiff in *Brunault* read the label affixed to the OFF! brand Yard and Deck Area Repellant II insecticide prior to applying it to his skin, he would have understood that the product he used was not the popular SKIN OFF!, a product manufactured by the same company and meant to be applied to the skin, but instead was a very dangerous insecticide not meant to be topically applied to skin.

chemical marker is the only basis asserted in Plaintiffs' Complaint for their product liability, implied warranty of fitness of a particular purpose, implied warranty of merchantability, and recklessness counts. Such a chemical "marker" or "warning" contained in the product itself would, as in the *Brunault* case, call for an additional warning beyond that contained in the warnings on the product's EPA-approved label. "[A]ny claim concerning an additional warning to the customer/plaintiff regarding use of the product is a challenge to the content of the label and is thus preempted." *Wright v. Am. Cyanamid Co.*, 599 N.W.2d 668, 672 (Iowa 1999) (finding plaintiff's strict liability claim, which essentially alleged that the label should have warned that the herbicide was not effective against tall waterhemp, was clearly a challenge to the adequacy of the label; thus plaintiff's strict liability claim was preempted by FIFRA); *see also Nat'l Bank of Commerce of El Dorado, Ark.*, 165 F.3d at 608 (FIFRA preempts state common law claims for failure to warn); *Bice v. Leslie's Poolmart, Inc.*, 39 F.3d 887, 888 (8th Cir.1994) (finding FIFRA preempted plaintiff's claim that the label on her swimming pool supplies failed to adequately warn her of their hazardous nature); *King v. E.I. Dupont De Nemours and Co.*, 996 F.2d 1346, 1349 (1st Cir.1993) (FIFRA preempts state law tort claims based on an alleged failure to provide adequate warnings); *see generally Kuiper v. Am. Cyanamid Co.*, 131 F.3d 656, 662 (7th Cir.1997) (citing to numerous federal courts which held that state law claims directly challenging the product label itself are preempted by FIFRA).

"If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends." *Papas v. Upjohn*, 985 F.2d 516, 519 (11th Cir.1993). "Because claims challenging the adequacy of warnings on materials other than the label or package of a product necessarily imply that the labeling and packaging failed to warn the user, we conclude that theses claims are also pre-empted by FIFRA." *Id.*

Plaintiffs argued at hearing that like the court in *Ackerman*, the Court in this case has the benefit of expert testimony indicating the product's safety could not be fixed by altering its label. Ackerman alleged that a herbicide was defective because it carried over to the following crop year and negatively affected the corn yield. *Ackerman*, 586 N.W.2d at 213. The expert testimony available in *Ackerman* pointed to several studies that indicated American Cyanamid knew the herbicide caused carryover damage and that the product was not adequately degradable in certain weather conditions. *Id.* at 215. In concluding Ackerman's claim for negligent design and testing was not preempted by FIFRA, the court found that Ackerman was not simply alleging that adequate testing would have caused American Cyanamid to alter the herbicide label, but that Ackerman was directly alleging that adequate testing and proper design would have caused American Cyanamid to alter the product itself. *Id.* The alleged defect in *Ackerman* more readily pertained to a defect in the design or manufacture of the product. The herbicide at issue in *Ackerman* told farmers how soon they could plant various crops on fields that had been treated with the herbicide, instructing farmers that corn could be planted eleven months after the last application of the herbicide. *Id.* at 210. Despite waiting eleven months after the last application of the herbicide to his corn field, the herbicide caused carryover damage to Ackerman's crop and his follow corn did not do well. *Id.* at 211. Thus, the product failed to function properly and suffered from a

defect in its design, that is, the herbicide was not adequately degrading prior to the next crop. Unlike *Ackerman*, Plaintiffs do not allege that Agrox Premiere failed to function properly, and the testimony of Dr. Brown does not indicate that the product functioned improperly.

Plaintiffs, citing *Wright*, contend that they have clearly demonstrated through expert testimony that their claims relate not to the labeling of Agrox Premiere, but to the "affirmative duty on manufacturers of potentially dangerous chemicals to guard against design or manufacturing defects in their chemicals." *Wright*, 599 N.W.2d at 673 (recognizing such duty exists). Plaintiff has not alleged a manufacturing defect, and Plaintiffs' design defect claim is clearly premised on a failure to warn.

## C. Implied Preemption: EPA Regulation

Finally, Defendant argues that Plaintiffs claim that Agrox Premiere should have contained a warning in the form of a chemical colorant that would have provided notice of presence directly conflicts with EPA regulations which do not require pesticide products to contain or be distributed with a chemical color alert to warn end-users. Defendant contends that EPA regulations specifically exempt hopperbox seed treatment products from any colorant requirement whatsoever, and therefore Plaintiffs' claims are impliedly, as well as expressly, preempted. Plaintiffs assert that their claims are not implicitly preempted by EPA regulation 40 C.F.R. § 153.155(b), stating that there is no direct conflict between this EPA regulation and Plaintiffs' state law claims, and that the EPA regulation dye exemption has no relevance to the issue in this matter.

FIFRA authorizes the EPA to "prescribe regulations requiring any pesticide to be colored or discolored if the Administrator determines that such requirement is feasible and is necessary for the protection of health and the environment". 7 U.S.C. § 136w (c)(5). "Pesticide products intended for use in treating seeds must contain an EPA-approved dye to impart an unnatural color to the seed, unless appropriate tolerances or other clearances have been established under the Federal Food, Drug and Cosmetic Act for residues of the pesticide." 40 C.F.R. § 153.155(a). "The following products are exempt from the requirement of paragraph (a) of this section ... Products intended and labeled for use solely as at-planting or *hopper box treatments*." 40 C.F.R. § 153.155(b) (2) (emphasis added).

"[A] court should not find pre-emption too readily in the absence of clear evidence of a conflict". *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 885, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 90, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)). Plaintiffs argue that there is no clear evidence of a conflict between the EPA regulation and their defective design claims, asserting that Agrox Premiere is exempt from the requirement to have a coloring agent because the seed it treats is for planting only, and the reason for adding a dye has nothing to do with warning or protecting applicators.

Implied preemption requires the Court to analyze whether Plaintiff's state law claims would conflict with 40 C.F.R. § 153.155(b)(2). *See Harris v. Great Dane Trailers Inc.*, 234 F.3d 398, 400 (8th Cir. 2000).

[A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, or when state law is in actual conflict with federal law. We have found im-

plied conflict pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Union Ctr. Redevelopment Corp. v. Nat'l R.R. Passenger Corp.,* 103 F.3d 62, 64 (8th Cir.1997) (quoting *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)) (internal citations and quotations omitted).

■ "Federal regulations have no less pre-emptive effect than federal statutes". *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 692, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984); *see also Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 154, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (same); *In re Medtronic, Inc.,* 184 F.3d 807, 811 (8th Cir.1999) (citing *Capital Cities Cable, Inc.,* 467 U.S. at 699, 104 S.Ct. 2694). To impose state law liability upon Defendant for failing to add a dye to Agrox Premiere, a hopperbox seed treatment, would impose liability on Defendant for manufacturing and distributing Agrox Premiere without a dye, conduct that is specifically authorized by 40 C.F.R. § 153.155(b)(2). Plaintiff's claims, to the extent they seek to impose liability on Defendant for not including a dye in the Agrox Premiere, would be implicitly preempted by 40 C.F.R. § 153.155(b)(2).

## CONCLUSION

Plaintiffs have creatively addressed a very unique and difficult legal issue. Plaintiffs' claims, however, although carefully crafted as stemming from a product design defect, are essentially premised on a failure to warn. As such, Plaintiffs' claims are preempted by FIFRA and cannot be asserted in this action. Plaintiff's Motion for Partial Summary Judgment

(Clerk's No. 28), seeking to strike or dismiss Defendant's affirmative defense of FIFRA preemption, must be **denied.** Defendant's Motion for Summary Judgment (Clerk's No. 45) must be **granted,** and Plaintiffs' claims shall be **dismissed.**

**IT IS SO ORDERED.**